FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.
2011 APR -5 AM 10: 12
CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

CLYBURN LEROY MOSES,

    Plaintiff,

vs.

Dr. HENRY SEXAUER,

    Defendant.

CIVIL ACTION NO.: CV209-025

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is an inmate currently incarcerated at the Federal Correctional Institution in Jesup, Georgia, filed a Complaint, as amended, pursuant to 28 U.S.C. § 1331 and Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), contesting certain conditions of his confinement. Defendant Henry Sexauer ("Defendant") filed a Motion to Dismiss, to which Plaintiff responded. (Doc. Nos. 60, 62). For the reasons which follow, Defendant's Motion should be **GRANTED**.

## STATEMENT OF THE CASE

Plaintiff claims that on July 22, 2008, he began vomiting blood and went to the correctional institution's Health Services Unit ("HSU") to seek treatment. Defendant, who was working at the HSU, allegedly witnessed Plaintiff vomiting blood, but due to an unspecified "conflict" between the Plaintiff and Defendant, Defendant recommended that Plaintiff "go to [the] commissary and buy medication," rather than provide necessary medical care. (Doc. No. 28). Two days later, on July 24, 2008, Plaintiff

AO 72A
(Rev. 8/82)

returned to HSU "complaining about being denied proper medical attention and treatment of his serious medical conditions." (Id.). According to Plaintiff, he "continued to complain about defendant's conduct towards inmates, and questioned the defendant's medical treatment involving the treatment of plaintiff's illness." (Id.). Plaintiff informed Defendant of his intention to inform his family about Defendant's failure to provide adequate medical treatment. (Doc. No. 45). Plaintiff then returned to his housing unit to call his family when Defendant summoned him to return to HSU. An argument ensued when Plaintiff returned to HSU, and Plaintiff told Defendant, "I called my brother and he is going to report you to the proper authorities." (Id.). Defendant allegedly responded, "Since your brother is going to report me, lets [sic] take a trip to the lieutenant's office." (Id.). Once at the lieutenant's office, Defendant allegedly "falsified a code violation and requested that plaintiff be placed in the [Special Housing Unit]." (Id.).

Plaintiff filed a pro se action on March 12, 2009, against Defendant and Timothy Thomas, a nurse at the correctional institution, claiming that they denied him proper medical attention. (Doc. No. 1). Plaintiff amended his complaint on September 21, 2009. (See Doc. No. 28.). Plaintiff abandoned his prior claims, and replaced them with a First Amendment retaliation claim. (Id., see also Doc. No. 34). The amended complaint contained claims against Defendant only and alleged that Defendant retaliated against Plaintiff by having him placed in the SHU for complaining about the quality of medical treatment that Defendant provided. (Id.). Defendant's conduct, Plaintiff alleges, is a violation of his First Amendment "right to freedom of speech and to redress grievance without interference or retaliation." (Id.).

In the instant Motion, Defendant asserts Plaintiff has not exhausted his administrative remedies with regard to his First Amendment claim.

## STANDARD OF REVIEW

In considering a motion to dismiss filed pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, a court must determine whether a plaintiff's "[f]actual allegations [are] enough to raise the right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). In making this determination, a court must construe the complaint in a light most favorable to the plaintiff. Christopher v. Harbury, 536 U.S. 403, 406 (2002). Furthermore, all facts alleged by the plaintiff must be accepted as true. Id. at 406. When evaluating a motion to dismiss, the issue is not whether a plaintiff will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." Little v. City of North Miami, 805 F.2d 962, 965 (11th Cir. 1986). The threshold is "'exceedingly low'" for a complaint to survive a motion to dismiss. Ancata v. Prison Health Services, Inc., 769 F.2d 700, 703 (11th Cir. 1985) (quoting Quality Foods de Centro America, S.A. v. America Agribusiness Devel., 711 F.2d 989, 995 (11th Cir. 1983)). A complaint filed by a *pro se* plaintiff is held to even less stringent standards than a complaint drafted by a lawyer. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (citing Conley, 355 U.S. at 45-46).

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). "Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a

jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Id. (internal punctuation and citation omitted). A judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id.

## DISCUSSION AND CITATION TO AUTHORITY

Pursuant to 42 U.S.C. § 1997e(a), federal prisoners must exhaust their administrative remedies prior to filing suit. See also, Porter v. Nussle, 534 U.S. 516, 524 (2002); Booth v. Churner, 532 U.S. 731, 739 (2001). All available remedies must be exhausted, even if they cannot provide the specific relief sought in the litigation. Booth at 741. Additionally, the Supreme Court has held that the PLRA statute applies to causes of action under Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971), and has made clear that federal inmates bringing Bivens actions must first exhaust inmate administrative grievance procedures prior to instituting suit. Porter, 534 U.S. at 524-25.

The Bureau of Prisons has established an administrative remedy procedure through which an inmate may seek review of a grievance related to any aspect of their imprisonment. See 28 C.F.R. § 542 et seq. Under the applicable regulations, an inmate must generally first seek to resolve an issue of concern informally by presenting the issue to correctional staff. See 28 C.F.R. § 542.13. If this does not resolve the matter, an inmate must submit a formal written administrative remedy request within 20 days of the incident giving rise to the grievance. Id. § 542.14.

Administrative Remedy Form BP-229(13) is the form used at the institutional level to initiate grievances and is commonly referred to as a BP-9 form. Id. If

unsatisfied with a warden's response to the BP-9 administrative remedy request, an inmate may take an initial appeal to the appropriate BOP regional director within 20 days of when the warden signed the response. Id. § 542.15. An Administrative Remedy Form BP-230(13) is used by the regional level and is commonly referred to as a BP-l0 form. If unsatisfied with the regional director's response, an inmate may take a final appeal to BOP's Office of General Counsel in Washington, D.C., within 30 days after the Regional Director signed the response. Id. An appeal to the BOP's Office of General Counsel is the final step in the BOP's administrative remedy process. Administrative Remedy Form BP-231(13) is used by the BOP's Office of General Counsel's final level of appeal and is commonly referred to as a BP-11 form.

The level of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures. Jones v. Bock, 549 U.S. 199, 218 (2007). However, when a prison's grievance procedures are silent or incomplete as to factual specificity, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." Doe v. Wooten, CV107-2764, 2010 WL 2821795, at *2 (N.D. Ga. July 16, 2010). Section 1997e(a) of the PLRA requires a prisoner to provide in his administrative grievance as much relevant information about his claims as he can reasonably provide. Brown v. Sikes, 212 F.3d 1205, 1210 (11th Cir. 2000).

> [A] prison official's serious threats of substantial retaliation against an inmate for lodging or pursuing in good faith a grievance make the administrative remedy "unavailable," and thus lift the exhaustion requirement as to the affected parts of the process if both of these conditions are met: (1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness

and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust.

Turner v. Burnside, 541 F.3d 1077, 1085 (11th Cir. 2008)

A review of the administrative remedies records in this case shows that Plaintiff filed a BP-9 with the Warden's office dated August 5, 2008. That grievance states,

> On July 12, 2008, I ate some bad food in the Prison Dining Hall. I started throwing up blood. I went to Medical, and they took my [b]lood and [t]emperature. Medical sent me back to the Unit. I continued to be severely sick and throwing up blood. The Unit Officer witnessed me throwing up the blood, and called Medical and sent me back to Medical. Medical sent me to the outside [h]ospital where they [d]iagnosed me with Helicobacter Pylori Infection. (See documents attached). The documents attached specifically instruct[ ] what should be done if I have complications. On July 18, 2008 at 9:30 A.M., I started throwing up blood again. Because of lockdown, I had to wait until 11;00 to tell the Officer that I needed to go to Medical. The Unit Officer called Mr. Thomas and explained my condition. Mr. Thomas refused to let me go to Medical, and said for me to see him at Mainline. I did go talk with him at Mainline at 12:00 and explained to him the above, again, he refused to let me go to Medical to see the [d]octor. . . .
>
> Despite all that, Mr. Thomas still refused to let me seek medical help. I contacted my brother. He called the prison. Officer Johnson came and checked on me, and he again called medical. Medical told him that I was to come to sick call. That was Friday and I had to go all [w]eekend, 3 days sick. This is the only [i]nstitution that ever refused me [m]edical [a]ttention or [t]reatment.
>
> On July 22, 2008, Tuesday at Sick Call, without even taking my [b]lood [p]ressure or [t]emperature, or checking me out in any way, [Defendant] told me if I needed any [m]edicines, to get them from the Commissary. After explaining all I had went through over the [w]eekend, it was very unprofessional of [Defendant] to treat me with such disregard.
>
> On July 24, 2008, I again[ ] went to Medical at 8:30 AM because I was still sick and throwing up. Mr. Thomas was standing in the [l]obby talking to an inmate when I got there. I started throwing up a lot into a trash can in the [l]obby. Mr. Thomas just acted like nothing was wrong, finished his conversation and went into the back locking the door behind him. After [f]ive (5) or (10) [t]en minutes of still throwing up I knocked on the door to get some help. At that time the Nurse . . . yelled at me like I was a dog, saying, get from that door and go somewhere and sit down, which was very unprofessional.

I left, went back to my unit. About (30) [t]hirty [m]inutes [l]ater I was called back to Medical. When I walked into the [l]obby the inmates informed me that they overheard [Defendant], [the n]urse and Mr. Thomas talking about me saying to just put me in the S.H.U. [T]hey then checked my BP, Temp., and prostate. [Defendant] then walked to the L.T's [o]ffice. He said something to the L.T on [d]uty and left. The Compound Officer then took me to the SHU, where I again threw up on the floor several times. After two hours in the SHU, I was told I will be released back to the compound, where I continued to throw up. July 24, 25th, and 26th of 2008. . . .

(Doc. No. 60-1, pp. 21-22). Plaintiff's requested relief was to be transferred to the medical facility at Butner, North Carolina. (Id. at 22). Plaintiff received an administrative remedy response denying his requested relief. (Id. at p. 24). Plaintiff appealed the response, stating that the response did not address or resolve the complaints raised in the BP-9. (Id. at p. 25). The portion of Plaintiff's statement in his BP-10 concerning Defendant states, "Approximately half [an] hour later I was called to medical because my brother had called prison officials to inform them of what was happening with me. They checked my blood pressure, temperature and prostate, and after that the doctor walked me over to the Lt's office. Subsequently I was put in the SHU." (Id. at p. 26). Plaintiff's appeal was denied, and he filed a BP-11, which stated that Defendant "denied medical attention to plaintiff-inmate" (Id. at p. 29).

Plaintiff states his allegations in his BP-10 "clearly show a possible retaliation by the defendant due to the complaints made against him by plaintiff's brother." (Doc. No. 62, p. 2). Plaintiff also states that even though his administrative remedies did not use the word "retaliation," the facts regarding the actions of the defendant were of retaliatory nature and should have been investigated by B.O.P. officials as such." (Id.). Plaintiff alternatively argues that the administrative remedy process was unavailable to him. (Id.).

In his BP-9, Plaintiff did not complain that he was the victim of retaliation by Defendant, but rather said that Defendant "walked him to the L.T.'s Office." (Id.). Further, Plaintiff did not use any words synonymous with retaliation in violation of his constitutional rights by Defendant in his BP-9 grievance. In his BP-10, Plaintiff made similar allegations as before that he had not received proper medical care and again requested to be transferred to a medical facility. Plaintiff did not use any words synonymous with retaliation in violation of his constitutional rights by Defendant in his BP-10 appeal. In his BP-11 appeal, Plaintiff made similar allegations as previously raised in his BP-9 and BP-10 that he had not received proper medical care and that he should be transferred to a medical facility. Plaintiff did not complain in his BP-11 appeal about being the victim of retaliation by either BOP staff or Defendant. None of Plaintiff's grievances alerted the prison that the nature of the wrong for which Plaintiff was seeking redress was for retaliation.

Plaintiff's claim that the administrative remedy process was unavailable to him is without merit. Plaintiff made complaints concerning Defendant's alleged inadequate medical care in his grievances. Plaintiff also referred to Defendant as "unprofessional," an action that does not indicate a fear of retaliation. Plaintiff states Defendant retaliated against him during the informal stage of his administrative remedy process and Plaintiff was not able to pursue retaliation claims. However, even if Defendant threatened Plaintiff with retaliation, the threat did not deter Plaintiff from lodging a grievance against Defendant, and therefore he cannot argue that the administrative remedy was unavailable to him.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendant's Motion to Dismiss be **GRANTED** and that Plaintiff's Complaint be **DISMISSED**, without prejudice, due to Plaintiff's failure to exhaust his administrative remedies prior to filing suit.

**SO REPORTED AND RECOMMENDED**, this 5th day of April, 2011.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE